UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

           Plaintiff,           No. 18-cr-20826

v.                                  Hon. George Caram Steeh

D-2 GUY JEROME EVANS,

           Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

### I. INTRODUCTION

In the spring of 2018, defendant Guy Evans participated in a string of destructive burglaries of pharmacies and dispensaries in Detroit, Michigan. He and his co-conspirators smashed stolen vehicles into the establishments' doors and then took whatever valuable drugs they could find for the purpose of selling them. While these offenses are among the most serious for which Evans has been convicted, Evans has a lengthy criminal history, reflecting a willingness to return to property crimes time and again. In these circumstances, the government recommends the Court impose a sentence of 71 months imprisonment.

1

## II.  STATEMENT OF FACTS

Between mid-February and mid-March 2018, Evans participated in a month's long string of burglaries of pharmacies and dispensaries. The goal was to obtain opioids and marijuana, respectively, two valuable controlled substances that could be re-sold on the street.

Evans and his co-conspirators accomplished the burglaries in a particularly destructive manner. To facilitate their entry into the establishments, Evans and his co-conspirators would ram stolen vehicles, which they themselves had stolen, into the establishments' front doors and/or security gates. They did so in the middle of the night, and it often took several tries to gain entry. Upon sufficiently destroying the buildings to gain access, Evans and his co-conspirators would raid the pharmacies and dispensaries for whatever valuable controlled substances they could find, which they would then turn around and sell. Evans participated in five such burglaries: two at pharmacies, and three at dispensaries. (PSR ¶¶ 12-16).

The burglaries, however, were not just limited to pharmacies and dispensaries. On several of these same evenings, Evans and his co-conspirators also used vehicles to force their way into clothing stores, liquor stores, and a cellular phone store, from which they stole thousands of dollars of goods. (PSR ¶¶ 17-22).

While they timed their burglaries to take place in the middle of the night—when the establishments were ostensibly unoccupied—Evans and his co-conspirators were in for a surprise at one of the dispensaries. After forcing their way into the East Warren Wellness dispensary on February 21, 2018, they unexpectedly encountered a dispensary employee, who had been sleeping in the store that night. The employee, fearing for his own safety based on the violent nature of the forced entry, retrieved a firearm and fired several shots at the intruders. Fortunately, no one was hit. The gun, however, appears to have jammed; but for that malfunction, the ending to that evening might have been much more tragic.

In December 2018, Evans and two of his co-conspirators were indicted in a multiple-count indictment related to the string of burglaries. (Dkt. #1.) The charges included conspiracy to commit pharmacy burglary, conspiracy to possess with intent to distribute controlled substances, and several individual counts of pharmacy burglary and possession with intent to distribute controlled substances. On June 18, 2019, Evans pled guilty to Count Two, which charged conspiracy to possess with intent to distribute controlled substances, to wit hydrocodone, codeine, and marijuana, in violation of 21 U.S.C. §§ 841 & 846.

### III.     DEFENDANT'S CRIMINAL HISTORY

Evans has an extensive criminal history, with the majority of his prior convictions involving theft. A theme of his criminal history is stealing vehicles: by the government's count, four of his prior convictions involved stolen vehicles. In the instant case, history again has repeated itself as Evans and his co-conspirators utilized stolen vehicles to gain entry and victimize the targeted businesses.

Evans's criminal history also reflects a pattern in the past of not taking seriously the consequences of his criminal behavior and not being able to comply with court ordered supervision. The defendant committed his first felony offense in 2006 and was convicted of Attempted Receiving and Concealing a Stolen Motor Vehicle. (PSR ¶ 39). While on bond for that offense, the defendant was arrested and subsequently convicted of his second felony, Unlawfully Driving Away an Automobile. (PSR ¶ 40). While serving a term of probation for his first two felony convictions, the defendant again resumed his criminal activities and was convicted of his third felony offense, Receiving and Concealing a Stolen Motor Vehicle. (PSR ¶ 41). While on probation for these three felony offenses, the defendant again chose to violate the law and was convicted of Home Invasion 1st degree and Felony Firearm. (PSR ¶ 42). The defendant was then sentenced to a minimum of four years in prison.

The defendant's history has shown that even a four year prison sentence is inadequate to deter him from committing additional criminal acts. After being released on parole, the defendant repeatedly absconded from supervision and committed new crimes. In 2016 the defendant was convicted of Fleeing and Eluding – Third Degree and was sentenced to another prison term. (PSR ¶ 43). After being released on parole again, the defendant promptly absconded on multiple occasions, cut off his tether twice, and again committed new felonies. In 2018, along with the instant offenses, the defendant was convicted of Attempted Receiving and Concealing a Stolen Motor Vehicle. (PSR ¶ 44).

The defendant's criminal history and his conduct while under supervision can only be described as abhorrent. Since 2006, this defendant has been under some form of court supervision, either bond, probation, or parole. Despite this oversight, the defendant continued to break the law and continued to victimize the community by stealing vehicles, breaking into homes, breaking into businesses, and fleeing from the police. This conduct over the previous thirteen years demonstrates that only a lengthy prison sentence is adequate to ensure the safety of the community and prevent the defendant from committing new crimes.

### IV. SENTENCING GUIDELINE CALCULATIONS AND OTHER RELEVANT 3553(A) FACTORS

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those factors are: (1)the nature and circumstances of the offense and the history and characteristics of the defendant; (2)the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3)the kinds of sentences legally available; (4)the sentencing guidelines; (5)the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7)the need for restitution.

Despite being advisory, the Guidelines remain an important factor in fashioning a just sentence. The probation department calculated a guideline range of 70 to 87 months imprisonment and both parties agree with this guideline range. In this case, the Section 3553(a) factors support a sentence of imprisonment of 71 months, equal to the agreed upon maximum as contemplated by the Rule 11 plea agreement, as well as three years of supervised release.

The seriousness of Evans's offenses warrant a significant sentence. Rather than burglarize pharmacies and dispensaries with cunning, Evans and his co-conspirators used brute force. In so doing, Evans and his co-conspirators not only

contributed to the opioid crisis gripping our community, but left rubble—literally—in their wake.  Further, they did not limit themselves to stealing drugs; they also broke into other retail establishments to steal items of value.  It is not an understatement to say that they were literally racing around the city, looking for the next target to smash.  It seems that only the inevitable sunrise at the conclusion of each night interrupted their serial burglaries.

Evans's extensive criminal history, and the need for his sentence to promote respect for the law, protect the public, and afford deterrence, also weigh in favor of a significant sentence.  Evans's criminal history reflects a pattern of engaging in property crimes aimed at enriching himself at the expense of others.  Evans's failures to abide by the terms of supervision reflect a willingness in the past to sidestep responsibility for his actions and return to criminal activity as soon as possible.

## V.     CONCLUSION

For the reasons discussed herein, the government recommends a sentence of 71 months imprisonment as being sufficient but not greater than necessary.  The government further recommends three years of supervised release, to include the special conditions recommended by Probation.

        Respectfully submitted,

        MATTHEW SCHNEIDER
        United States Attorney

        */s/ Robert VanWert*
        Robert VanWert
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI  48226
        robert.vanwert@usdoj.gov
        (313) 226-9776

Dated: October 23, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Lillian F. Diallo

    */s/ Robert VanWert*
Robert VanWert
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
robert.vanwert@usdoj.gov
(313) 226-9776